973 A.2d 821

Kevin P. CLARK, et al.

v.

Martin O'MALLEY, et al.

No. 768, Sept. Term, 2008.

Court of Special Appeals of Maryland.

June 10, 2009.

196

Neal M. Janey & Gregory M. Kline (Andrew Radding, Adelberg, Rudow, Dorf & Hendler, LLC, A. Dwight Pettit, Mitchell D. Treger, Stuart O. Simms on the brief), Baltimore, for appellant.

Matthew W. Nayden & Kathryn W. Sullivan of Baltimore, for appellee.

Panel: SALMON, GRAEFF and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

GRAEFF, J.

This appeal arises from a dispute between appellant, Kevin P. Clark, the former Police Commissioner for Baltimore City, and appellees, the Honorable Martin O'Malley, the former Mayor of Baltimore City ("Mayor"), and the Mayor and City Council of Baltimore ("City").[1] The dispute centers on the

---

1. The "Mayor and City Council of Baltimore" refers to a municipal corporation. *See* BALTIMORE CITY CHARTER, art. I, § 1 ("The inhabitants

Mayor's actions in terminating Mr. Clark's employment on November 10, 2004. Substantial litigation has ensued since that time.

Shortly after Mr. Clark was terminated, he filed in the Circuit Court for Baltimore City a complaint, and a first amended complaint, for declaratory and injunctive relief. Mr. Clark requested: (1) a declaration that the Mayor's actions in terminating his employment were unlawful; (2) reinstatement to his position as Police Commissioner; and (3) compensatory and punitive damages. The circuit court granted appellees' motion for summary judgment, concluding that the Mayor properly terminated Mr. Clark, without cause, pursuant to a Memorandum of Understanding ("MOU") signed by the parties. Mr. Clark appealed.

In *Clark v. O'Malley*, 169 Md.App. 408, 439, 901 A.2d 279 (2006) (*"Clark I "*), this Court reversed the circuit court's order, holding that the Mayor could remove the Police Commissioner only for cause as set out by Baltimore City Public Local Laws ("P.L.L."), § 16–5(e). This Court held that the MOU, which provided that either party could terminate the employment contract by giving 45 days written notice, expanded "the Mayor's authority beyond that granted by the General Assembly," and that provision, therefore, was invalid. *Id.* at 438, 901 A.2d 279. Thus, we held that summary judgment on this ground was improper, and we remanded the case to the circuit court to address other defenses raised by appellees.

The Court of Appeals affirmed this Court's decision in *Mayor & City Council v. Clark*, 404 Md. 13, 33, 944 A.2d 1122 (2008) (*"Clark II "*). The Court of Appeals agreed that "[t]he removal power, as articulated in § 16–5(e) . . . is not modifiable by a MOU," and it held that the language in the MOU here, which allowed either party to terminate the contract without cause, conflicted with P.L.L. § 16–5(e) and was unenforceable. *Id.*

of the City of Baltimore are a corporation, by the name of the 'Mayor and City Council of Baltimore,' and by that name shall have perpetual succession, may sue and be sued. . . .").

Mr. Clark then filed in the circuit court a Motion for Writ of Mandamus or Injunction For Reinstatement to Office Forthwith. On June 17, 2008, the Honorable Carol E. Smith denied the motion for reinstatement. On July 15, 2008, the Honorable Albert J. Matricciani, Jr. granted appellees' motion for summary judgment on the remaining counts of the complaint. Judge Matricciani then denied as moot a motion to intervene filed by Natasha Clark, Mr. Clark's wife, based on her "interest in protecting the confidentiality" of court records that appellees sought to have introduced into evidence.

Mr. Clark and Ms. Clark filed separate appeals. Mr. Clark presents the following issues for our review, which we rephrased as follows:

1.  Did the circuit court err in denying Mr. Clark's request for reinstatement to the position of Police Commissioner?

2.  In light of the Court of Appeals decision that Mr. Clark's employment could not properly be terminated without cause, did the circuit court err in denying Mr. Clark's motion for partial summary judgment on the issue of liability?

3.  Did the circuit court err in granting appellees' motion for summary judgment on the ground that, pursuant to the liquidated damages clause in the MOU, Mr Clark had already received the damages to which he was entitled?

Ms. Clark presents the following issue for our review: Did the circuit court err in denying Ms. Clark's motion to intervene?

For the reasons set forth below, we shall affirm the judgment of the circuit court with respect to Mr. Clark. In light of that disposition, we shall dismiss Ms. Clark's appeal as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Mr. Clark was appointed Police Commissioner of Baltimore City by the Mayor and confirmed by the City

Council. In February 2003, prior to his confirmation, Mr. Clark and the Mayor executed a MOU in which Mr. Clark agreed "to serve the remaining term of the last Commissioner until June 30, 2008," for which he would receive a salary of $150,000 per year. The MOU provided three ways in which Mr. Clark's employment could be terminated. First, he could be terminated pursuant to P.L.L. § 16–5(e), which provided that "[t]he Police Commissioner is subject to removal by the Mayor for official misconduct, malfeasance, inefficiency or incompetency, including prolonged illness. . . ." Second, Mr. Clark could be terminated for "just cause," defined in the MOU as

(1) Gross dereliction of duty; as to any one incident or series of conduct.

(2) Illegal use of intoxicants or drugs; or

(3) Indictment of a felony or any other crime involving moral turpitude or theft.

Third, the MOU provided that either party could terminate the employment agreement at any time, *i.e.*, without cause, by giving 45 days written notice.

With respect to termination without cause, § 12 of the MOU provided:

**SECTION 12 *RIGHT TO TERMINATE WITHOUT CAUSE***

Either party may terminate this contract at any time, by giving forty-five (45) days prior written notice to the other. Notwithstanding the above sentence the provisions of Section 2B remain in force.

Section 2.B of the MOU set forth the compensation due to Mr. Clark if he was terminated "for any reason other than for just cause":

**If** Clark is willing and able to perform employment duties under this Agreement and **the employment of Clark is (1) terminated in the Initial Term by City for any reason other than for just cause as defined in Paragraph 2.A.;** or (2) in the event Clark is forced to resign following a

formal or informal suggestion by the Mayor that he resign; ... or (4) in the event, for any reason whatsoever other than for just cause as above defined the Mayor does not reappoint and the Council confirm the reappointment of Clark to a full six-year term immediately following the Initial Term, **City agrees to pay Clark a lump sum payment, as and for additional compensation/severance, equal to six (6) months aggregate salary, including retirement benefits calculated as the employer's share of retirement benefits at the time of termination** or non-reappointment as defined herein. Clark shall also be fully compensated for any accrued sick leave, vacation, compensatory time and any other accrued benefits at the time of termination or failure of reappointment. Should Clark not be reappointed or terminated without just cause, **Clark agrees that the additional compensation/severance lump sum payment set out above shall satisfy all obligations City has to Clark as a result of the termination/non-reappointment.**

(Emphasis added).

Pursuant to this provision in the contract, on November 10, 2004, the City Solicitor hand-delivered a letter to Mr. Clark's counsel, informing Mr. Clark that his employment would terminate in 45 days. The letter advised, in part:

This notice is sent on behalf of the Mayor and City Council of Baltimore (the "City") pursuant to Sections 12 and 13 of the Memorandum of Understanding ("MOU") between you and the City dated February 19, 2003. This notice shall serve as the City's 45–day notice of termination of your employment. Thus, your employment shall terminate 45 days from today. However, as the Mayor announced this morning, you have been relieved of all official duties as of 8:30 a.m., November 10, 2004, and therefore, your further access, if any, to Police Department facilities, equipment, or documents will be subject to the specific, prior authorization of Acting or Interim Police Commissioner Hamm.

The City will begin immediately to do a calculation of the salary and benefits to which you may be due under the February 19 MOU and will advise you of the details once appropriate calculations are made.

For the next 45 days, through late December 2004, the City paid Mr. Clark, pursuant to the MOU, his biweekly salary of $5,769.24, minus deductions. Moreover, on January 25, 2005, pursuant to the MOU, the City sent Mr. Clark a check for $49,318.76, "reflecting Mr. Clark's aggregate salary for six months ($75,000), minus deductions." The next day, the City sent Mr. Clark another check for $8,513.22, for "unused vacation time and comp time in the amount of $ 13,269.25, minus deductions."[2]

## A

### Mr. Clark's First Lawsuit in State Court

On November 16, 2004, Mr. Clark filed in the Circuit Court for Baltimore City a Verified Complaint for Declaratory and Injunctive Relief against the Mayor. Mr. Clark subsequently filed a First Amended Complaint for Declaratory and Injunctive Relief, which added the Mayor and City Council of Baltimore as an additional defendant and included ten counts. Count I alleged that the Mayor's action in terminating him was unlawful and in violation of P.L.L. § 16–5(e). Mr. Clark requested a declaration that the Mayor's actions were unlawful and injunctive relief reinstating him to office. Count II requested a declaratory judgment that the Mayor's acts in relieving Mr. Clark of his command were illegal and that Mr. Clark "is the only person entitled by law to serve" as Police Commissioner "until his term of office expires in June

---

**2.** The record reflects that Mr. Clark returned some of the money that the City paid to him. In a letter to the Baltimore Police Department, Mr. Clark's counsel explained that Mr. Clark returned some of the money because he wanted "any and all disbursements to him, other than his regular payroll checks, to be deferred and held by the City until the conclusion of the litigation." At the July 14, 2008, hearing before the circuit court, appellees' acknowledged that some of the money had been returned to the City by Mr. Clark, but that "it is available."

2008...." Counts III, IV, and V requested injunctive relief, a writ of quo warranto, and a writ of mandamus compelling appellees to reinstate Mr. Clark as Police Commissioner. Count VI requested the court to issue a writ of certiorari "to review" the Mayor's actions. Count VII alleged that the Mayor "knowingly, willfully and maliciously violated [Mr. Clark's] procedural due process rights under Article 24 by summarily relieving [Mr. Clark] of his command ... and terminating him without affording him prior notice...." Mr. Clark requested declaratory and injunctive relief as well as compensatory and punitive damages. Counts VIII, IX, and X alleged that the Mayor breached the terms of the MOU by terminating Mr. Clark without "notice, a specification of charges and a pretermination hearing," and without identifying the "just cause" as enumerated in § 2.A of the MOU.

On November 17, 2004, Mr. Clark filed a Motion for Injunctive Relief and an Application for a Temporary Restraining Order, requesting that the circuit court enjoin appellees from relieving Mr. Clark of his duties as Police Commissioner. The next day, following a hearing, the circuit court denied Mr. Clark's request for a temporary restraining order.

On November 19, 2004, Mr. Clark noted an interlocutory appeal to this Court pursuant to Md.Code (2002 Repl.Vol.), § 12–303(3)(iii) of the Courts and Judicial Proceedings Article. That same day, Mr. Clark sent a letter to the Honorable Joseph H.H. Kaplan, in the circuit court, requesting that the court "issue an injunction pending appeal on the same terms and conditions that were sought in Plaintiff's Application for a Temporary Restraining Order." The circuit court denied Mr. Clark's Motion for Injunction Pending Appeal, reasoning that: (1) "Plaintiff has suffered no irreparable harm in that he is being paid his full salary for approximately the next six months in accordance with the [MOU]"; (2) "[i]t is less than likely that Plaintiff will be successful on the merits"; and (3) "[t]he public interest would in no way be served by Plaintiff's reinstatement as Police Commissioner of Baltimore City." On December 9, 2004, Mr. Clark voluntarily dismissed his interlocutory appeal.

On December 13, 2004, appellees responded to Mr. Clark's complaint by filing a Motion to Dismiss or, in the Alternative, for Summary Judgment. Appellees argued that, "[b]ecause the language of Mr. Clark's employment contract unambiguously provides for termination without cause, Clark has no cause of action against the Mayor." The circuit court denied appellees' motion, concluding that there was a genuine dispute of material fact regarding notice:

[T]here does, indeed, exist a genuine dispute of material fact; one being, just off the top of my head, the issue of notice that was raised in the papers in the court file.

For that reason, as well as information obtained in the file, the Court is going to deny the Motion to Dismiss at this time and the Motion for Summary Judgment.

On February 10, 2005, appellees filed another motion for summary judgment. Appellees argued that the City gave the notice required by the contract, provided Mr. Clark with the monies that he was due under the contract, and that the contract contained a provision stating that payment of these monies "shall satisfy all obligations the City has to Clark" as a result of the termination.

On April 4, 2005, the circuit court granted appellees' motion for summary judgment. Because the amended complaint included a request for a declaratory judgment, the court issued the following findings:

2. The Memorandum of Understanding between Clark and City is a valid and binding contract.

3. Section 12 of the Memorandum of Understanding unambiguously provides both parties with a right to terminate without cause upon giving forty-five days prior written notice to the other.

4. Section 12 is a valid and binding provision of the Memorandum of Understanding.

5. On November 10, 2004, the defendants sent notice to Clark, through counsel, that Clark's employment as Police Commissioner would be terminated without cause

in forty-five days pursuant to Section 12 of the Memorandum of Understanding.

6. Clark received the forty-five days prior notice of termination to which he was entitled.

7. The City properly exercised its right to terminate Clark's employment without cause pursuant to Section 12 of the Memorandum of Understanding.

Mr. Clark noted an appeal from the circuit court's order.

## B.

### This Court's Decision on Appeal

On June 30, 2006, in *Clark I*, this Court reversed the circuit court's order, concluding that, based on P.L.L. § 16–5(e), "the Mayor may only remove the Commissioner 'for official misconduct, malfeasance, inefficiency or incompetency, including prolonged illness, in the manner provided by law in the case of civil officers.'" 169 Md.App. at 436–37, 901 A.2d 279. This Court held that the MOU, which provided that either party could terminate the employment contract by giving 45 days written notice, expanded "the Mayor's removal authority beyond that granted by the General Assembly," and that provision, therefore, was invalid. *Id.* at 438, 901 A.2d 279. The Court of Appeals granted appellees' Petition for a Writ of Certiorari on October 16, 2006. *Baltimore v. Clark,* 395 Md. 56, 909 A.2d 259 (2006).

## C.

### Mr. Clark's Second Lawsuit in Federal Court

On November 9, 2007, while his case was pending in the Court of Appeals, Mr. Clark and two of his chief officers filed suit in the United States District Court for the District of Maryland. *Francis v. Giacomelli,* No. WDQ–07–3034, slip op. at 1–2 (D.Md. July 16, 2008). The plaintiffs sued the Honorable Martin O'Malley, former City Solicitor Ralph Tyler, and several Baltimore City police officers, who, according to the plaintiffs' complaint in federal court, "detained" Clark and his

two chief officers, ordered them to "surrender their weapons, badges, and identification cards," and searched their desks and file cabinets. *Id.* The plaintiffs alleged that the defendants: (1) violated the Fourth and Fourteenth Amendments to the United States Constitution, in depriving them of the right against illegal searches and seizures; (2) violated 42 U.S.C. § 1981 by terminating them from their positions in the police department based on their race; (3) deprived them of property interests without due process, in violation of the Fourteenth Amendment, by terminating them without notice; and (4) violated 42 U.S.C. § 1985 by a conspiracy to deprive them of their civil rights.

## D.

### Court of Appeals Decision

On March 20, 2008, in *Clark II,* the Court of Appeals affirmed this Court's decision that the contractual language in the MOU, which authorized the Mayor to terminate the Police Commissioner without cause, was invalid. 404 Md. at 33, 944 A.2d 1122. The Court stated that the General Assembly sets the public policy of the State, and the General Assembly provided, in P.L.L. § 16–5(e), the exclusive reasons for which the Police Commissioner is "subject to removal by the Mayor." *Id.* at 34, 944 A.2d 1122. "Section 16–5(e) simply does not contemplate that there will be other reasons for termination, and thus does not permit the Mayor to add any, i.e. extend its reach." *Id.* The Court held:

> The removal power, as articulated in § 16–5(e), we hold, is not modifiable by a MOU, and, in particular, the contractual language at issue in the case *sub judice.* In that regard, we reiterate, "a contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy." *Medex v. McCabe,* 372 Md. 28, 39, 811 A.2d 297, 304 (2002). *See also State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.,* 307 Md. 631, 643, 516 A.2d 586, 592 (1986) (holding that a contractual provision that violates public policy is invalid, but only to the

extent of conflict between stated public policy and contractual provision). Thus, because the provision of the MOU that states that "[e]ither party may terminate this contract at any time, by giving forty-five (45) days prior written notice to the other," without need to provide cause, conflicts with § 16–5(e) of the Public Local Laws, that provision, pursuant to which the Mayor acted to terminate Clark, is unenforceable.

*Id.* at 33, 944 A.2d 1122.

### E.

### Proceedings in State Court on Remand

On May 9, 2008, Mr. Clark filed in the circuit court a Motion for a Writ of Mandamus or Injunction for Reinstatement to Office Forthwith. He argued that "[t]he Court of Appeals of Maryland ruled unanimously in [*Clark II* ] that Plaintiff was removed from the Office of Police Commissioner of Baltimore City illegally by Mayor O'Malley." Therefore, Mr. Clark argued, "[a]s a result of the decision of the Court of Appeals in [*Clark II* ], Plaintiff unquestionably is entitled to a Writ of Mandamus or an Injunction reinstating him to the Office of Police Commissioner of Baltimore City."

On May 27, 2008, appellees filed an opposition to Mr. Clark's Motion for a Writ of Mandamus or Injunction for Reinstatement to Office Forthwith and a motion for summary judgment. Appellees argued that Mr. Clark had been "rendered ineffective by a public scandal" resulting from a " 'widely publicized domestic dispute' that occurred on May 15, 2004." They asserted that this "domestic dispute' became a distraction to the real work of the Baltimore Police Department ("BPD") as Clark insisted on launching an active four month investigation' of his own command staff regarding their handling of the incident." Appellees argued that "termination without cause, pursuant to § 12 of the MOU, offered the method of removing Clark that was least disruptive to the mission of the BPD and in the interest of the citizens of Baltimore." Acknowledging that, based on the Court of Ap-

peals decision in *Clark II*, the "termination may have been accomplished by a technically flawed method," they argued, for the reasons set forth below, that judgment should be granted in their favor on all counts.

With respect to Mr. Clark's request that the court reinstate him to office, appellees argued that this claim should be denied because Governor O'Malley was no longer the Mayor of Baltimore City, and "Governor O'Malley cannot be ordered to reinstate Clark to office under any of [the] theories alleged." Appellees further argued that Mr. Clark failed to name necessary parties as defendants to this case, including current Mayor Sheila Dixon, former Interim Police Commissioner Hamm, and current Police Commissioner Bealefeld. Moreover, appellees argued that reinstating Mr. Clark is "patently contrary to the public interest" and doing so "would force [Mr. Clark] upon the [Baltimore Police Department] and the citizens of Baltimore, whose duly elected Mayor recently appointed a well-received and successful Police Commissioner."

With respect to the claims requesting compensatory damages, appellees argued that, pursuant to the liquidated damages clause in the contract, "[t]he City's payment of the amount specified satisfied all of its obligations to Clark arising out of the termination." Finally, with respect to Mr. Clark's claim that the Mayor violated his due process rights, appellees argued that Mr. Clark waived any claims for damages by "entering into the MOU that expressly permitted his removal from office without cause and by explicitly agreeing that if he was terminated for any reason other than cause, as defined under the contract, he would be limited to the liquidated damages set forth in Section 2B of his contract."

On June 6, 2008, appellees filed a motion seeking to seal evidence submitted in support of appellees' opposition to Mr. Clark's Motion for a Writ of Mandamus or Injunction for Reinstatement to Office Forthwith. The evidence sought to be sealed was an "investigative summary prepared by the Howard County Police Department . . . following its investigation into Kevin P. Clark's May 15, 2004 domestic dispute, as

well as additional New York state court records that were requested as part of the Howard County investigation." [3]   Mr. Clark filed an opposition to review of these records, arguing that "his New York Family Court records are here in Baltimore illegally."   He contended that the records "were either stolen or obtained under false pretenses" because "[t]he only manner they can be obtained is pursuant to a judicial order of the New York Family Court" and "[n]o such order was ever issued."   On July 28, 2008, the circuit court granted appellees' motion, and it ordered the records sealed.

On June 9, 2008, Mr. Clark filed a partial motion for summary judgment, arguing that the Court of Appeals found that he was unlawfully terminated, which necessitated a finding in his favor "on the issue of liability as a matter of law." He argued that "[t]he only issue that remains to be decided by a jury in this case is the issue of damages," and therefore, the court should grant his motion for partial summary judgment.

On June 17, 2008, the Honorable Carol E. Smith denied Mr. Clark's request to reinstate him as Police Commissioner.   The court rejected Mr. Clark's argument that the decision in *Clark II* required reinstatement, noting that the opinion addressed only the legality of the termination provision in the MOU. Moreover, Judge Smith noted, this Court's decision, which was affirmed by the Court of Appeals, remanded the case to consider additional questions, such as "waiver, estoppel, and damages."

The circuit court went on to find that a writ of mandamus to reinstate Mr. Clark as Police Commissioner was not justified in this case, for several reasons.   First, the current Mayor, Sheila Dixon, who by law was the only person authorized to

---

**3.**   The public disclosure of an " 'investigative report from the Howard County Police Department regarding Police Commissioner Kevin Clark and a dispute he had with his [fiancee] on May 15, 2004,' " was the subject of a prior unreported opinion issued by this Court when local news organizations filed suit under the Maryland Public Information Act to disclose this report while Mr. Clark was Police Commissioner. *See O'Malley v. Baltimore Sun Co.*, No. 1456, Sept. Term 2004, slip op. at 1 (filed November 1, 2004) (in banc).

appoint Mr. Clark to the position of Police Commissioner, "ha[d] not been named, added as a party, or had the opportunity to raise any issues" for the court's consideration.

Second, the court explained:

[I]n an action for mandamus challenging title to public office, the party sought to be removed from office is a necessary party to the lawsuit. *See Dorsey v. Ennis,* 167 Md. 444, 175 A. 192 (1934); *Brown v. Bragunier,* 79 Md. 234, 29 A. 7 (1894). Neither the current Baltimore City Police Commissioner, nor the former interim Baltimore City Police Commissioner has been named, added as a party, or served in this lawsuit. Obviously, the proposed reinstatement would particularly affect the rights and interests of current Commissioner Frederick Bealefeld, and he has not had the opportunity to be heard.

Third, the court stated:

Relief by Mandamus will also be refused where reinstatement to office would be a useless and nugatory act. *Bragunier,* 79 Md. 234, 29 A. 7 (1894). A "useless and nugatory act" results where, subsequent to the time of application for the writ, the term of office to which the Petitioner seeks reinstatement has almost expired, or will expire before the writ can become effective. *See* Am.Jur.2d Mandamus § 292 (2008) (citing *Mootz v. Belyea,* 60 N.D. 741, 236 N.W. 358 (1931)); 55 C.J.S. Mandamus § 232 (citing *Ruch v. Wilhelm,* 352 Pa. 586, 43 A.2d 894 (1945); *Cowan v. State ex rel. Scherck,* 57 Wyo. 309, 116 P.2d 854 (1941)). Were he reinstated, Kevin Clark's term as Police Commissioner would terminate on June 30, 2008.

A fourth reason given by the court was that:

[A]n action for writ of mandamus may not be maintained if the Petitioner has another available, adequate remedy. *Myers v. Chief, Baltimore County Fire Bureau,* 237 Md. 583, 207 A.2d 467 (1965); *[s]ee also* 52 Am.Jur.2d Mandamus § 290 (citing *Wilson v. Department of Public Works, City and County of Los Angeles,* 153 Ca.App.2d 152, 314 P.2d 84 (1957); *Lenz v. Cobo,* 338 Mich. 383, 61 N.W.2d 587

(1953); *State ex rel. Cater v. N. Olmsted,* 69 Ohio St.3d 315, 631 N.E.2d 1048 (1994)). Here, Clark has another remedy in his suit for damages against the City for wrongful termination.

Fifth, the court stated that "a writ of mandamus directed to a municipal authority will not be granted where it would introduce great confusion or disorder." The court explained:

If reinstated, Kevin Clark's term as Police Commissioner would expire on June 30, 2008. Reinstatement to his position as Police Commissioner for thirteen days or less would surely bring about great and unnecessary disorder and cause inevitable confusion in the operations and administration of the Baltimore Police Department. Here, the chaos likely to ensue is arguably far greater and more significant than the confusion the Court sought to prevent in [*Kinlein v. Mayor & City Council of Baltimore,* 118 Md. 576, 85 A. 679 (1912) ], because the issuance of a writ would not only upset the City's financial affairs. It would oust the current Commissioner from his position, force a considerable change of leadership upon an important State agency, and disrupt its operation and administration for a short period of time.

Finally, the court stated, in denying the writ of mandamus, that "the Court of Special Appeals, whose decision was affirmed, remanded the case to the circuit court for the consideration of issues of waiver, estoppel, and damages. This has yet to occur."

On July 15, 2008, the Honorable Albert J. Matricciani, Jr. denied Mr. Clark's motion for partial summary judgment and granted appellees' motion for summary judgment.[4] The court addressed each count raised by Mr. Clark and found that the only viable count remaining was count VII, which alleged a violation of due process:

[Mr. Clark's] requests for declaratory relief have been rendered moot as a result of the decision in this case issued

---

4. Judge Matricciani is now a member of this Court, but he did not participate in the conferencing and adoption of this opinion.

by the Court of Appeals on March 20, 2008, and his requests for injunctive relief were denied in a Memorandum and Order issued by Judge Carol E. Smith of this Court on June 17, 2008. Thus, Counts I, II, III, IV, V and VI have been resolved. Counts VIII, IX and X are no longer viable as they were predicated upon alleged breaches of contract for terminating plaintiff without just cause (Counts VIII & IX) and without valid notice (Count X). As to the just cause counts, the defendants have not claimed that they had "cause" to terminate plaintiff, invoking instead his contract provision, § 12 of the MOU, dated February 2003, which purported to allow the City to terminate Clark without cause upon 45 days notice. It is, of course, this provision which was found by the appellate courts to be violative of the PLL § 16–5(e) and, therefore, unenforceable. *Clark v. O'Malley,* 169 Md.App. 408, 438–439, 901 A.2d 279 (2006), *aff'd by Mayor & City Council of Baltimore v. Clark,* 404 Md. 13, 33, 944 A.2d 1122 (2008). The invalid notice claim set forth in Count X was decided against plaintiff in this Court's Declaratory Judgment of April 4, 2005. The Court of Special Appeals found that Clark had not raised below a genuine issue of material fact regarding notice and left this Court's ruling on that issue undisturbed. *See* 169 Md.App. at 425, 901 A.2d 279. Clark failed to challenge that ruling in his appeals. Therefore, it is precluded from relitigation under the law of the case doctrine.

*Fidelity-Baltimore Nat'l Bank & Trust Co. v. John Hancock Mut. Life Ins. Co.,* 217 Md. 367, 142 A.2d 796 (1958).

Thus, the sole remaining count is Clark's state constitutional violation claim for a denial of due process in connection with his firing (Count VII). Both sides seek summary judgment treatment of this claim, defendants asserting that plaintiff has waived it or is estopped from pursuing it and plaintiff contending that defendants' liability on it was established by the appellate decisions in this case.[5]

---

**5.** Neither party disputes the court's assessment of the procedural posture of the case. Mr. Clark's appeal involves the June 17, 2008, order

The court then addressed Mr. Clark's claim in count VII, that the Mayor violated his procedural due process rights under Article 24 of the Maryland Declaration of Rights [6] by "terminating him without affording him prior notice." The court stated:

Plaintiff's claim for compensatory damages is, however, limited by the terms of his contract with the City. MOU, § 2.B. The Court of Special Appeals accepted as undisputed the fact that Clark was sent a check that would have satisfied the terms of the MOU in the event of termination. 169 Md.App. at 421–425, 901 A.2d 279. Consequently, plaintiff's claim for compensatory damages is limited to the relief already provided by the defendants. Moreover, on the record before this Court for purposes of the cross motions for summary judgment, the only basis Clark can assert for a violation of his due process rights is that the Mayor relied on a contract provision that was later deemed to be invalid. That is insufficient as a matter of law to support a claim for punitive damages. *See Associates Discount Corp. v. Hillary*, 262 Md. 570, 580, 278 A.2d 592 (1971) ("But where the act, though wrongful in itself, is committed in the honest assertion of a supposed right, ... there is no ground on which such damages can be awarded.") (citation omitted). Thus, in the absence of any dispute as to material facts and because defendants are entitled to judgment as a matter of law, the Court will enter summary judgment for defendants on Count VII.

---

of Judge Smith denying his request to be reinstated to office, and the July 15, 2008, order granting summary judgment on count VII, which Mr. Clark acknowledges in his brief was "the only surviving Count." Curiously, though, Mr. Clark then states that the circuit court was "flatly wrong on the issue of notice to Clark and committed error by disregarding the claim in Count X."

**6.** Article 24 provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." MD DECL. RIGHTS, art. 24.

The circuit court made clear that it was not finding that "Clark waived or is equitably estopped from pursuing his due process violation claim for money damages," noting that "the question of whether plaintiff may accept the benefits conferred by the MOU for a period of two years and then challenge its validity is a factual one, not properly disposed of on a motion for summary judgment." The court explained that its decision was based "upon its finding that § 2.B of the MOU is valid and enforceable." The court stated:

The issue of the continuing validity of the MOU § 2.B was expressly remanded to this Court for determination, in light of the Court of Appeals' careful articulation that a contract provision that violates public policy is invalid only to the extent of conflict between the stated public policy and the contractual provision. *See* 404 Md. at 33, 944 A.2d 1122. The liquidated damages provision presents no such conflict.

The court then addressed Mr. Clark's motion for partial summary judgment regarding appellees' liability. In denying the motion, the court stated: "The decisions of the Court of Special Appeals and the Court of Appeals did not address this issue. They were confined to a finding that the termination provisions of the MOU, §§ 2.A and 12, were unenforceable as in conflict with existing statutory law."

The court's orders, denying Mr. Clark's motion for partial summary judgment and granting appellees' motion for summary judgment, were entered on the docket on July 18, 2008.

### F.

### Federal Court Dismisses Complaint

On July 16, 2008, one day after the circuit court granted appellees' motion for summary judgment, but two days before the order was entered on the docket, the United States District Court granted the defendants' motion to dismiss the complaint filed by Mr. Clark and two of his chief officers. *Francis,* No. WDQ–07–3034, slip op. at 10. With respect to Mr. Clark's due process claim, the court held that, even assuming that there had been a violation of due process, Mr.

Clark was not entitled to relief because the Mayor was entitled to qualified immunity. *Id.,* slip op. at 9. With respect to the remaining counts, the court concluded that the claims should be dismissed because the plaintiffs failed to state a claim upon which relief could be granted. *Id.,* slip op. at 3–8.

## G.

### Proceedings Relating to Ms. Clark

On June 16, 2008, ten days after appellees filed a motion to seal evidence regarding records it sought to introduce in opposition to Mr. Clark's motion seeking reinstatement to office, Natasha Clark, Mr. Clark's wife, filed a motion to intervene in the lawsuit. She claimed "an interest in protecting the confidentiality of these records," and argued that "the disposition of the Defendants' Motion to Seal may impede or impair her ability to protect the confidentiality of these records unless she is permitted to intervene." After the circuit court granted appellees' motion for summary judgment, it denied as moot the motion of "Natasha Clark to intervene."

## DISCUSSION

### I.

### Mr. Kevin Clark

Mr. Clark attacks the circuit court's rulings on three grounds. First, he argues that the court abused its discretion in denying his motion for a writ of mandamus or for an injunction for reinstatement to office. He contends that the Court of Appeals determined that his termination was unlawful, and, therefore, he is entitled to reinstatement as Police Commissioner. His second contention, that the circuit court erred in denying his motion for partial summary judgment, is similarly based on his contention that the Court of Appeals decided the issue of liability, leaving only the question of damages. Third, Mr. Clark contends that the court erred in granting appellees' motion for summary judgment on the ground that the City had tendered a check for the sole

damages to which Mr. Clark was entitled pursuant to the MOU.

Appellees argue that the circuit court did not abuse its discretion in determining that Mr. Clark is not entitled to reinstatement, and, in any event, this claim is moot because the term of employment under the MOU has expired. They further argue that the circuit court properly resolved the summary judgment motions, denying Mr. Clark's motion for partial summary judgment and granting their summary judgment motion based on the liquidated damages clause in the MOU. Finally, they argue that Mr. Clark's claims are barred by res judicata.

## A.

### Reinstatement to Office

Mr. Clark contends that the circuit court erred in denying his request to be reinstated as Police Commissioner. He argues that the Court of Appeals decision in *Clark II* determined that he was removed from office illegally, and, therefore, he was entitled to reinstatement.

Appellees argue that Mr. Clark's appeal is moot because his term of employment as Police Commissioner expired on June 30, 2008, and, therefore, the "courts can no longer provide the remedy requested." Mr. Clark counters that this appeal is not moot because "there remains a live controversy concerning the manner, method, authority to discharge from employment and the damages related to that discharge that can only be resolved by a determination of the applicability of state law."

We agree with Mr. Clark that the expiration of the term of employment does not render the entire appeal moot. With respect to his claim that the circuit court erred in denying his request to be reinstated to office, however, we agree with appellees that this claim is moot.

"Ordinarily, courts will not decide moot or abstract questions, or render advisory opinions." *Creveling v. Gov't Employees Ins. Co.*, 376 Md. 72, 83 n. 3, 828 A.2d 229 (2003).

"Although the Court has the constitutional authority to decide moot cases, we rarely exercise it." *In re Criminal Investigation No. 1–162,* 307 Md. 674, 680, 516 A.2d 976 (1986). "A case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy." *In re Joseph N.,* 407 Md. 278, 301, 965 A.2d 59 (2009) (quoting *Coburn v. Coburn,* 342 Md. 244, 250, 674 A.2d 951 (1996)).

Several Maryland cases illustrate this principle. In *Nat'l Collegiate Athletic Assoc. v. Tucker,* 300 Md. 156, 158–59, 476 A.2d 1160 (1984), the Court of Appeals addressed a dispute regarding collegiate athletic eligibility. The circuit court granted an interlocutory injunction allowing two lacrosse players at Johns Hopkins University to play their final season of lacrosse until the lawsuit was resolved. *Id.* at 158, 476 A.2d 1160. The NCAA appealed, but the Court held that the case became moot once the season was over. *Id.* at 159, 476 A.2d 1160. It explained: "[A] controversy no longer exists over whether the appellees will be allowed to play lacrosse for the remainder of the season because, simply put, the season is over." *Id.*

Similarly, in *County Comm'rs of Charles County v. Sec'y of Health & Mental Hygiene,* 302 Md. 566, 567, 489 A.2d 1127 (1985), the Court of Appeals addressed whether an issue relating to a building permit was moot when the permit had expired. In that case, the County issued a building permit to a church, but the Department of Health and Mental Hygiene subsequently issued an order declaring that the building permit was void and ordering the County to revoke it. *Id.* After the Department issued its order, the church ceased construction. *Id.* Pursuant to the terms of the building permit, it expired if work was suspended for a period of six months after commencement. *Id.* On appeal, the Court of Appeals held that the issue of whether the Department had the authority to declare the permit null and void was moot because the permit had expired. *Id.* at 568, 489 A.2d 1127.

The same analysis applies when an employee seeks reinstatement to a former position pursuant to a fixed term contract that has expired. *See Muir v. County Council of Sussex County,* 393 F.Supp. 915, 935 (D.Del.1975) (although plaintiff's employment was terminated improperly, court declined to grant injunctive relief because the expiration of employee's contract rendered "plaintiff's demand for reinstatement for breach of his contract . . . moot"); *DeWitt v. Sch. Bd. of Sarasota County,* 799 So.2d 322, 324 (Fla.Dist.Ct.App.2001) (assistant high school principal's claim for reinstatement was moot because "[h]is contract expired . . . he was paid in full according to the terms of his contract, and he was not entitled of right to a renewal of his contract"); *Heaney v. Board of Trs.,* 98 Idaho 900, 575 P.2d 498, 499 (1978) (because the plaintiff's contract expired . . . shortly after his mandamus suit was filed, his suit for reinstatement was moot); *Richardson v. Hardin–Central C–II Pub. Sch. Dist.,* 884 S.W.2d 53, 55 (Mo.Ct.App.1994) (suit, which alleged termination of employment in violation of due process and sought reinstatement, was moot when teacher's contract had expired).

Here, counts I, II, III, IV, and V of Mr. Clark's amended complaint requested, among other things, that the circuit court reinstate Mr. Clark as Police Commissioner or declare that he was the only person entitled by law to serve as Police Commissioner. Mr. Clark's February 2003 contract, however, provided that he was "to serve the remaining term of the last Commissioner until June 30, 2008." Thus, Mr. Clark's contract expired on June 30, 2008. Because his term of employment has expired, Mr. Clark's request for reinstatement is moot.

If the denial of reinstatement was the only issue on appeal, our finding that the issue was moot would require that we dismiss the appeal. *See Dep't of Human Res., Child Care Admin. v. Roth,* 398 Md. 137, 143, 919 A.2d 1217 (2007) ("[W]e generally dismiss moot actions without a decision on the merits."). Here, however, Mr. Clark additionally requested damages. Accordingly, we will address that claim.

## B.

### Motions for Summary Judgment

The parties each filed motions for summary judgment. Mr. Clark's Motion for Partial Summary Judgment alleged that he was entitled to summary judgment because "[t]he issue of liability in this case was decided by the Court of Appeals in [*Clark II* ]," and "[t]he only issue that remains to be decided by a jury in this case is the issue of damages." Mr. Clark contends that the circuit court erred in denying his motion, arguing that he "was entitled to the issuance of partial summary judgment for liability for the Mayor's due process violations." [7]

Appellees contend that Mr. Clark "misinterprets the prior appellate holdings in this case." They state that these opinions "held only that the Mayor of Baltimore City's ability to remove the Police Commissioner for reasons other than those enumerated in § 16–5(e) of the Public Local Laws of Baltimore City and by procedures other than those set forth in § 3–307 of the State Government Article could not be altered by contract." They posit that the appellate courts' holdings that §§ 12 and 2.A of the MOU were unenforceable "does not invalidate the remainder of the agreement." Thus, they argue, Mr. Clark was not entitled to summary judgment on the issue of liability.

Moreover, appellees contend, the trial court properly granted their motion for summary judgment. They argue that § 2.B of the MOU "is a valid election of remedies clause that limits Clark's compensatory damages to $75,000," and the circuit court "was correct in holding that Clark had been tendered all of the damages to which he is entitled."

---

7. At oral argument, counsel for Mr. Clark suggested that the circuit court erred in granting appellees' motion for summary judgment for the additional reason that it was granted prior to the completion of discovery. Because that argument was not made in the briefs on appeal, we will not address this argument. *See Klauenberg v. State*, 355 Md. 528, 552, 735 A.2d 1061 (1999) ("[A]rguments not presented in a brief or not presented with particularity will not be considered on appeal.").

"It is settled that summary judgment is appropriate when there is no genuine dispute of material fact and a party is entitled to judgment as a matter of law." *120 W. Fayette St., LLLP v. Mayor of Baltimore,* 407 Md. 253, 264, 964 A.2d 662 (2009). In determining whether summary judgment is appropriate, "[w]e construe the factual record in the light most favorable to the non-movants." *Newell v. Runnels,* 407 Md. 578, 607, 967 A.2d 729 (2009). "If no material facts are placed in genuine dispute, this Court must determine whether the Circuit Court correctly entered summary judgment as a matter of law." *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condo.,* 404 Md. 560, 571, 948 A.2d 11 (2008). "Whether a trial court's grant of summary judgment was proper is a question of law and is reviewed *de novo* by the appellate courts." *Conaway v. Deane,* 401 Md. 219, 243, 932 A.2d 571 (2007).

We turn first to the denial of Mr. Clark's motion for partial summary judgment. Our first task is to address the scope of the previous appellate decisions in this case. In *Clark II,* the Court of Appeals held that the Mayor's power to discharge under P.L.L. § 16–5(e) was limited to the grounds set forth in the statute, and that the contractual language in the MOU, which authorized the Mayor to terminate the Police Commissioner without cause, was unenforceable. 404 Md. at 34, 944 A.2d 1122. As indicated, the Court of Appeals stated:

"[A] contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy." *Medex v. McCabe,* 372 Md. 28, 39, 811 A.2d 297, 304 (2002). *See also State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.,* 307 Md. 631, 643, 516 A.2d 586, 592 (1986) (holding that a contractual provision that violates public policy is invalid, but only to the extent of conflict between stated public policy and contractual provision). Thus, because the provision of the MOU that states that "[e]ither party may terminate this contract at any time, by giving forty-five (45) days prior written notice to the other," without need to provide cause, conflicts with § 16–5(e) of the Public Local Laws, that provision,

pursuant to which the Mayor acted to terminate Clark, is unenforceable.

*Id.* at 33, 944 A.2d 1122.

The circuit court, in denying Mr. Clark's motion for partial summary judgment, properly interpreted the Court of Appeals decision as "confined to a finding that the termination provisions of the MOU, §§ 2.A and 12, were unenforceable as in conflict with existing statutory law." Contrary to Mr. Clark's argument, the Court of Appeals decision did not settle the ultimate question of liability. Indeed, the opinion of this Court, which the Court of Appeals affirmed, held that § 12 of the MOU was unenforceable, but it remanded the case to the circuit court to consider questions of waiver and estoppel, as well as "whether section 2.B limited Mr. Clark's claim for damages." *Clark I,* 169 Md.App. at 440 n. 10, 901 A.2d 279. The circuit court properly rejected Mr. Clark's claim that the issue of liability had been determined, and it properly denied Mr. Clark's motion for partial summary judgment.

■ We turn next to the circuit court's order granting appellees' motion for summary judgment. The circuit court made clear that it was not finding that "Clark waived or is equitably estopped from pursuing his due process violation claim for money damages," noting that "the question of whether plaintiff may accept the benefits conferred by the MOU for a period of two years and then challenge its validity is a factual one, not properly disposed of on a motion for summary judgment."

The basis for the circuit court's grant of summary judgment was its finding that Mr. Clark's claim for damages was limited to the terms of his contract with the City. Specifically, the court relied on the terms set forth in § 2.B, which, as indicated, limited Mr. Clark's damages based on termination "for any reason other than for just cause." Section 2.B of the MOU provided as follows:

**If** Clark is willing and able to perform employment duties under this Agreement and the **employment of Clark is (1) terminated in the Initial Term by City for any reason**

**other than for just cause as defined in Paragraph 2.A.;**
or (2) in the event Clark is forced to resign following a
formal or informal suggestion by the Mayor that he resign;
. . . or (4) in the event for any reason whatsoever other than
for just cause as above defined the Mayor does not reap-
point and the Council confirm the reappointment of Clark to
a six-year term immediately following the Initial Term, **City
agrees to pay Clark a lump sum payment, as and for
additional compensation/severance, equal to six (6)
months aggregate salary, including retirement benefits
calculated as the employers's share of retirement bene-
fits at the time of termination** or non-reappointment as
defined herein. Clark shall also be fully compensated for
any accrued sick leave, vacation, compensatory time and any
other accrued benefits at the time of termination or failure
of reappointment. Should Clark not be reappointed or
terminated without just cause, **Clark agrees that the addi-
tional compensation/severance lump sum payment set
out above shall satisfy all obligations City has to Clark
as a result of the termination/non-reappointment.**

(Emphasis added).

Based on the terms of § 2.B, and the fact that the City had
tendered a check to Mr. Clark that satisfied the terms of the
MOU, the circuit court found that Mr. Clark's claim for
compensatory damages was "limited to the relief already
provided." Rejecting Mr. Clark's claim that this provision
violated public policy, the court granted appellees' motion for
summary judgment.[8]

Mr. Clark contends that the circuit court erred in granting
appellees' motion for summary judgment. He argues that
*Clark II* "precludes any modification of the statutory terms of

---

[8]. The circuit court further found that the claim for punitive damages
failed as a matter of law, noting that the Mayor terminated Mr. Clark's
employment pursuant to a provision in the MOU that was later deemed
invalid, and that Mr. Clark had not alleged any fact indicating that the
Mayor acted with actual malice. Mr. Clark has raised no issue on
appeal challenging the circuit court's finding regarding his claim for
punitive damages.

employment relating to the police commissioner. Those statutory terms include *any* matters affecting the duration of Clark's term of office." He contends that, "because section 2.B [ ] relates to the duration of the statutory term of office for a state officer, it conflicts with public policy and is invalid."

Initially, we note that the public policy relied upon by Mr. Clark, that the Police Commissioner may be removed from office only for "official misconduct, malfeasance, inefficiency or incompetency, including prolonged illness," as set forth in P.L.L. § 16–5(e), has changed. The General Assembly has amended the Public Local Laws of Baltimore City, effective June 1, 2009, to allow a Police Commissioner to be removed from office "at the pleasure of the Mayor . . . ."[9] Thus, the General Assembly, which "sets the public policy of the State," *Clark II,* 404 Md. at 36, 944 A.2d 1122 has determined that the Mayor of Baltimore City has the power to terminate the Police Commissioner without cause.

In any event, the public policy under former P.L.L. § 16–5(e) addressed the reasons for which a Police Commissioner could be removed from office. Mr. Clark has cited no caselaw or other authority to support his contention that a contract setting forth the amount of compensation to which a Police Commissioner is entitled upon termination violates public policy. As appellees argue, former P.L.L. § 16–5(e), did "not address compensation of the Police Commissioner or in any way purport to limit the options of the Police Commissioner to agree contractually to liquidated damages and limitations of remedies."

Maryland courts generally are hesitant to invalidate voluntary bargains on public policy grounds, "doing so only in those cases where the challenged agreement is patently offen-

---

9. On April 14, 2009, pursuant to 2009 Md. Laws, Chaps. 39 and 40, effective June 1, 2009, P.L.L. § 16–5(e) was amended. The revised statute provides: "The Police Commissioner is subject to removal at the pleasure of the Mayor, as provided in section 6(c) of Article IV of the Charter of Baltimore City." Section 6(c) confers power on the Mayor "to remove at pleasure all municipal officers," with some limited exceptions not applicable here. BALTIMORE CITY CHARTER, art. IV, § 6(c).

sive to the public good, that is, where 'the common sense of the entire community would ... pronounce it' invalid." *Maryland–National Capital Park & Planning Com. v. Washington Nat'l Arena*, 282 Md. 588, 606, 386 A.2d 1216 (1978) (quoting *Estate of Woods, Weeks & Co.*, 52 Md. 520, 536 (1879)). The principle behind this reasoning is set forth in 17A AM.JUR.2D *Contracts* § 264 (1991):

> The courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain. Thus, it is said that the power of the courts to declare a contract void as against public policy must be exercised with caution and only in cases that are free from doubt. Since the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts of justice is to maintain and enforce contracts rather than to enable parties thereto to escape from their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare. Rules which say that a given agreement is void as being against public policy are not to be extended arbitrarily, because if there is one thing which more than another public policy requires it is that persons of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be enforced by courts of justice.

(Footnotes omitted).

The contractual provision here is not clearly illegal, and it does not violate public policy. Unlike § 12 of the MOU, § 2.B does not conflict with former P.L.L. § 16–5(e) because it does not expand the Mayor's authority to discharge the Police Commissioner. Rather, it is merely a liquidated damages clause, which sets the compensation to which Mr. Clark is entitled upon termination.[10]

---

10. We note that Article III, § 35 of the Maryland Constitution provides that, with certain exceptions, the "salary or compensation of any public officer" may not be "increased or diminished during his term of office." Md. Const. art. III, § 35. *See County Comm'rs of Anne Arundel County*

A liquidated damages clause is " 'a specific sum of money ... expressly stipulated by the parties to a ... contract as the amount of damages to be recovered by either party for a breach of the agreement by the other.' " *Barrie Sch. v. Patch*, 401 Md. 497, 507, 933 A.2d 382 (2007) (quoting *Bd. of Educ. v. Heister*, 392 Md. 140, 155, 896 A.2d 342 (2006)). *Accord* WILLIAM J. HOLLOWAY & MICHAEL J. LEECH, EMPLOY-MENT TERMINATION: RIGHTS AND REMEDIES, 705 (2nd ed.1992) (a liquidated damages clause in an employment contract "stipulates the amount of money [the employee] is to recover in the event [the employee] is discharged with or without cause prior to the expiration of the term of the agreement"). The party seeking to set aside the bargained for liquidated damages clause has the burden to prove that the clause should not be enforced. *Barrie Sch.*, 401 Md. at 507, 933 A.2d 382. When liquidated damages provisions in contracts " 'are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced.' " *Heister*, 392 Md. at 156, 896 A.2d 342 (quoting *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 92 L.Ed. 32 (1947)).

Pursuant to the above caselaw, an employee who signs an employment contract that contains a liquidated damages clause setting forth the compensation the employee will receive upon termination generally will be bound by that contract. Where the amount of compensation set forth in the agreement is reasonable, and where the contract is not void as against public policy, the employee must accept the compensa-

---

*v. Goodman*, 172 Md. 559, 561, 192 A. 325 (1937) ("any agreement of a public officer to accept less than his statutory salary is void as against public policy"). Mr. Clark does not argue that § 2.B violates this constitutional provision. Section 35 does not apply to public officers, like Mr. Clark, "whose full term of office is fixed by law in excess of 4 years." *See* P.L.L. § 16–5(a) (Police Commissioner is appointed for a term of six years). Moreover, § 35 specifically provides, with certain exceptions not relevant here, that "the salary or compensation of any appointed public officer of the Mayor and City Council of Baltimore may be increased or diminished at any time during his term of office . . . "

tion to which he agreed, and he cannot maintain a suit against the employer for additional damages.

Mr. Clark makes no allegation that § 2.B of the MOU was not a "reasonable attempt[ ] to fix just compensation." *Heister*, 392 Md. at 156, 896 A.2d 342. Indeed, this argument would be unavailing where, in addition to paying Mr. Clark his regular pay for 45 days after he was relieved of his duties, and paying him for his unused vacation and "comp" time, the City sent Mr. Clark a check equaling six months salary.[11]

Mr. Clark's sole argument is that § 2.B violated public policy because it had some relation to "the duration of Mr. Clark's term of office." We have rejected that argument. Accordingly, we hold that, because the City has tendered payment pursuant to the bargained for amount in the liquidated damages clause, Mr. Clark has received all the damages to which he is entitled. The circuit court properly granted appellees' motion for summary judgment.

## C.

### Res Judicata

Appellees argue that Mr. Clark's claims are barred by res judicata. They contend that "Clark split his claims regarding the termination of his appointment between state and federal court," and the judgment of the United States District Court, which dismissed Mr. Clark's claims on July 16, 2008, bars Mr. Clark's state claims.[12] Mr. Clark counters that res judicata does not bar his appeal because "the focus of the federal

---

11. As indicated, the record reflects that the City issued several checks in accordance with the terms of the MOU. Mr. Clark returned some of the money, but it is available to him.

12. The federal court's dismissal of Mr. Clark's claims on July 16, 2008, occurred a day after the circuit court granted appellees' motion for summary judgment. Pursuant to Md. Rule 2–601, however, a judgment is effective only after the clerk has entered the court's ruling on the docket. The circuit court's order granting appellees' motion for summary judgment was not entered on the docket until July 18, 2008. Accordingly, appellees argue that the federal court's June 16, 2008 decision bars the state court claims under the doctrine of res judicata.

action was different" and "[t]here was no final adjudication in the federal action of Clark's state allegations." Because we have found that Mr. Clark's request for reinstatement is moot, and that the circuit court properly granted appellees' motion for summary judgment regarding the remaining viable claim, we need not consider whether Mr. Clark's claims are barred by principles of res judicata.

## II.

### Ms. Natasha Clark's Motion to Intervene

We next address Ms. Natasha Clark's contention that the circuit court erred in denying her motion to intervene in this case. As indicated, in the circuit court, appellees moved to seal evidence they were submitting in support of their opposition to Mr. Clark's motion for reinstatement. The evidence sought to be sealed included records from New York state court. Ms. Clark argues that she had "a right to intervene" "to protect her interest in the privacy of documents obtained by the Mayor from the family law courts in New York."

Appellees counter that the circuit court properly denied her motion to intervene. They argue that "Mrs. Clark failed to identify how her interest 'in protecting the confidentiality of [the New York domestic] records' was not protected by the existing parties," noting that the City was protecting her interests by introducing the records under seal to prevent public disclosure, and that Ms. Clark failed to "assert that Kevin Clark could not adequately represent her interests with respect to the motion."

Although we are inclined to agree with appellees on the merits of this issue, the procedural posture of this case makes the issue moot. At this point in the proceedings, an order has been entered sealing the records from public disclosure. Pursuant to Md. Rule 16–1005(a), "[a] custodian shall deny inspection of a case record or any part of a case record if inspection would be contrary to," among other things, "[a]n order entered by the court having custody of the case record." As the

Committee Note to this Rule explains, "[s]o long as a court record is under seal or subject to an order precluding or limiting disclosure, it *may not be disclosed* except in conformance with the order." (Emphasis added).

Thus, it appears that, at this point, Ms. Clark's interest in protecting the confidentiality of the New York records has been satisfied. Moreover, because we are affirming the circuit court's order granting summary judgment in appellees' favor, absent a further appeal, there will be no trial and the records will not be introduced into evidence in this case. Therefore, the issue of whether Ms. Clark is entitled to intervene is moot. *See In re Joseph N.,* 407 Md. at 301, 965 A.2d 59 ("case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy"). Accordingly, we dismiss Ms. Clark's appeal.

**JUDGMENT AFFIRMED AS TO MR. KEVIN CLARK. APPEAL DISMISSED AS TO MS. NATASHA CLARK. COSTS TO BE PAID 75% BY APPELLANT MR. CLARK AND 25% BY APPELLANT MS. CLARK.**