896 A.2d 342

**BOARD OF EDUCATION OF TALBOT COUNTY, Maryland**

v.

**James D. HEISTER, et al.**

**No. 56, Sept. Term, 2005.**

Court of Appeals of Maryland.

April 13, 2006.

**142**

Douglas A. Collison (Kopen & Collison, LLP, Easton, on brief), for appellant.

James R. Whattam (Maryland State Teachers Assn. of Annapolis, on brief), for appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

We consider here whether a contractual provision included in all employment contracts for primary and secondary public school teachers in the State of Maryland (as required specifically by the Code of Maryland Regulations (COMAR)), providing that, in the case of breach, "salary already accrued will be forfeited, in the discretion of the Local Board of Education," is a valid and enforceable liquidated damages clause or an unenforceable penalty.

### I.

James D. Heister and Christina L. Marvel (Appellees), teachers in the Talbot County Public Schools ("TCPS") at the times relevant to this litigation, breached in 2003 their employment contracts with the Talbot County Board of Education (the "County Board") by failing to provide notice of their resignations prior to the contractually required May 1 deadline.[1] Following their resignations, accrued, but unpaid, salary for the school year August 2002 through August 2003 for Mr. Heister and Ms. Marvel was withheld, pursuant to the forfeiture provision in their employment contracts. Professionally certificated employees in the public schools of Maryland are required to execute one or the other of two employment contracts, depending on his or her certification status.[2] The Regular Teacher's Contract[3] states that "[i]f any of the conditions of this contract shall be violated by the certificated employee named herein, salary already accrued will be forfeit-

---

1. The Code of Maryland Regulations (COMAR) 13A.07.02.01B(2), which sets forth and mandates a uniform approach to employment contracts for professionally certificated employees in Maryland's public schools, states, in pertinent part:
 [E]ither of the parties to this contract may terminate it at the end of the first and second school year or on the second anniversary date of employment in regard to employees hired after January 1 following the commencement of a school year by giving notice in writing to the other, as of the following dates:
 (i) In the case of employees employed before January 1 following the commencement of a school year, not later than May 1 of that year or of the second year[.]

2. "For employees [teachers or otherwise] who hold professional certificates, the form entitled 'Regular Contract' shall be used and others may not be recognized." COMAR 13A.07.02.01B(1). "For employees who hold conditional or resident teacher certificates the form entitled 'Provisional Contract For Conditional or Resident Teacher Certificate Holders' shall be used, and no others shall be recognized." COMAR 13A.07.02.01C. The clause specified in footnote 1, *supra*, is provided for in the professionally certificated employee's contract. A similar provision for any breach appears in the provisional teacher's contract.

3. While Ms. Marvel was hired under the Regular Contract, Mr. Heister was hired under the ˜rovisional Contract for Conditional or Resident Teacher Certificate Holders. As stipulated by Appellee, at the time of resignation, however, he was employed under a Regular Contract.

ed, in the discretion of the Local Board of Education." CO-MAR 13A.07.02.01.B(2).

On appeal to Dr. Karen B. Salmon, the then Interim Superintendent of the Talbot County Public Schools, in accordance with § 4–205(c) of the Education Article of the Maryland Code (1978, 2001 Repl.Vol.),[4] the forfeitures against Mr. Heister and Ms. Marvel were upheld. Mr. Heister and Ms. Marvel separately appealed the Superintendent's decisions to the County Board. The County Board, in written memoranda on 25 February 2004, affirmed the Superintendent's decision. Consolidating their cases, Appellees appealed the County Board's decisions to the Maryland State Board of Education (the "State Board").

Affirming the decisions of the County Board, the State Board determined that the forfeiture provision was valid and enforceable. After acknowledging its broad statutory authority, the State Board noted that its "regulations are generally considered valid provided that the regulations do not contradict the statutory language or purpose." The State Board then stated the purposes of the forfeiture provision:

> The forfeiture clause was designed to further the legitimate public purpose of helping to ensure that teachers do not resign beyond a specified mid-summer date when it is difficult to hire replacements. The deterrence of late resignations provides a local board the time needed to recruit and hire qualified teachers to fill the resulting vacancies before the new school year begins. Equally as important, the provision attempts to reasonably compensate the local board for damages incurred in recruiting and training a replacement teacher at the last moment and the additional costs of using substitute teachers.

After examining the legal elements of an enforceable liquidated damages clause, the State Board determined that the forfeiture provision in the teachers' employment contracts

---

4. Unless otherwise provided, all statutory references are to the Education Article of the Maryland Code (1978, 2001 Repl.Vol.).

satisfied those elements and thus was a valid liquidated damages clause.

Appellees sought judicial review in the Circuit Court for Talbot County of the State Board's decision. The Circuit Court reversed the decision of the State Board and remanded the case to the State Board for further proceedings consistent with its ruling. The trial court judge orally explained the bases for the court's judgment as follows:

> The Court obviously can understand the intent of the Talbot County Board of Education, the State Board of Education in enacting such clauses in their contracts. But from my very brief exposure to this case [ ] and the law behind it, I find that the fact that salary forfeitures are not set forth as a penalty that will be imposed. The notice going out to the employees does not state, it says it may be. Because of that the action of the superintendent acting on behalf of the board and subsequently the Talbot board and subsequently the state board, is discretionary and the exercise of that discretion is arbitrary by those persons who are exercising it. Furthermore the Court has heard nothing as to why [ ] Section 3–505 of the Labor and Employment Article [of the Maryland Code (1991, 1999 Repl.Vol.) ] does not apply to teachers as well as any other employees. And that means that the forfeiture of monies already earned violates that section. And therefore the action of the boards is illegal.

The County Board appealed the Circuit Court's judgment to the Court of Special Appeals. On our initiative, we issued a writ of certiorari, before our colleagues on the intermediate appellate court could decide the case, to consider whether the forfeiture provision used in the employment contracts for professionally certificated employees of Maryland's public schools, teachers in this case, as mandated and set forth in COMAR, is a valid and enforceable contractual provision. *Board of Educ. v. Heister*, 388 Md. 404, 879 A.2d 1086 (2005).[5]

---

**5.** The County Board, in its brief before the Court of Special Appeals, framed the following questions for appellate review:

## II.

The material facts in the present case are not in dispute. The State Board, in its written opinion in this matter, detailed the factual backdrop:

(1) Did the Circuit Court err as a matter of law and fact in reversing the MSBE [Maryland State Board of Education] decision and rule the forfeiture provision unenforceable?

(2) Did the trial court err as a matter of law and fact in applying Section 3–505 of the Labor and Employment Article of the Annotated Code and not applying Section 3–503 of that same Article in ruling the provision was illegal?

We shall answer the first question in the affirmative and, because of that answer, need not address the latter question, which, in any event, the Circuit Court interjected in the case on its initiative. We note, however, in *Department of Labor v. Boardley*, 164 Md.App. 404, 414–15, 883 A.2d 953, 960 (2005), the Court of Special Appeals determined recently that a circuit court erred in "basing its decision to remand the case on excuses [by the claimant for not appearing before an administrative hearing examiner that were] never properly raised before the agency...." The court went on to summarize several of our recent and relevant decisions:

It is the function of the reviewing court to review only the materials that were in the record before the agency at the time it made its final decision. *Chertkof v. Dep't. of Nat. Resources*, 43 Md.App. 10, 17, 402 A.2d 1315 (1979). As Chief Judge Bell stated in *Dept. of Health v. Campbell*, 364 Md. 108, 123, 771 A.2d 1051 (2001):

[I]t is the final decision of the final decision maker at the administrative level, not that of the reviewing court, that is subject to judicial review. Accordingly, the reviewing court, restricted to the record made before the administrative agency, *see Cicala v. Disability Review Bd. for Prince George's County*, 288 Md. 254, 260, 418 A.2d 205, 209 (1980), may not pass upon issues presented to it for the first time on judicial review and that are not encompassed in the final decision of the administrative agency. Stated differently, an appellate court will review an adjudicatory agency decision solely on the grounds relied upon by the agency.

*Accord Schwartz v. Maryland Department of Natural Resources*, 385 Md. 534, 553–55, 870 A.2d 168 (2005) ("a reviewing court ordinarily ' "may not pass upon issues presented to it for the first time on judicial review...." ' "); *Brodie v. Motor Vehicle Administration*, 367 Md. 1, 3–4, 785 A.2d 747 (2001) ("Since Brodie's entire challenge to the administrative decision was based on an issue not raised before the agency, the circuit court should have affirmed the administrative decision without reaching the issue.")[.]

*Boardley*, 164 Md.App. at 415, 883 A.2d at 960.

*James D. Heister*

 At the time of his resignation, Mr. Heister was a second year teacher with TCPS assigned to Easton High School to teach math. Mr. Heister was employed under a Provisional Contract as required by *State Board regulation*.[6] The Provisional Contract contains the same forfeiture clause as the Regular Contract. *See* COMAR 13A.07.02.01C.

By letter of February 12, 2003, the Assistant Superintendent, John Masone, advised Mr. Heister that he would receive written notification from TCPS no later than May 1, 2003, if the local board were to decide not to renew his teaching contract. The letter also advised Mr. Heister of his obligation to provide timely written notice if he intended to resign from his position.[7] The letter states, in part:

> The Maryland employment contract also **requires you to notify us,** in writing, not later than May 1, 2003, if you wish to resign and thereby terminate your contract at the end of this school year. Resignations received after this date are considered to be in violation of the contract and may result in the suspension of your certification and/or forfeiture of salary. Please contact me immediately if you have any questions concerning the contractual rights and obligations described above.

By letter dated April 22, 2003, then Superintendent, J. Sam Meek, notified Mr. Heister that he was granted tenure.

On July 16, 2003, Mr. Heister met with Mr. Masone and turned in his resignation. The resignation letter states:

---

6. *See, supra,* footnote 3 of this opinion.

7. In a footnote, the State Board noted the following:

> An identical letter was sent to Mr. Heister during his first probationary year in 2002. TCPS distributes this form letter to each first and second year teacher. While this notification is not required by law or regulation, TCPS provides this letter to avoid untimely resignations. This notice letter represents a concerted effort by TCPS to help minimize the number of late resignations which the school system experienced in the late 1990's.

Due to a "Once in a life time" business opportunity I am turning in my resignation as a Mathematics Teacher at Easton High School. I do apologize for the late notice but the financing for the business has just been granted in the last two days. I have had a great experience with you and the rest of Talbot County Public Schools employees. I thank you for this experience and for the understanding that my resignation was not planned to be at such a late date.

When Mr. Masone reminded Mr. Heister of his contractual obligation and the penalties associated with an untimely resignation, Mr. Heister stated "I'll take my chances." *See* letter from Salmon to Cottington. The superintendent withheld the remaining payments of Mr. Heister's 12–month salary.[8]

TCPS provided substantial training and mentoring services to Mr. Heister during his employment with the school system. TCPS had no warning prior to July 16, 2003, that Mr. Heister did not intend to fulfill the obligations of his contract. TCPS has been unable to secure a replacement for Mr. Heister's position. A substitute teacher not certified in mathematics was placed in his classroom.[9]

---

**8.** In a footnote, the State Board noted the following:

All TCPS teachers are paid on a 12–month pay schedule, as negotiated between the local board and the Talbot County Education Association, the exclusive bargaining agent for the teachers. Mr. Heister did not receive three paychecks of $1,437.50 each, for a total of $4,312.50.

**9.** Mr. Heister asserts, in Appellees' joint brief, that "the County Board did hire a certificated teacher to replace Appell[ee] Heister at the beginning of the 2003–2004 school year; however, this teacher, Mr. Martin Sachs, resigned his position after only one month on the job. Therefore, contrary to the inference in Dr. Salmon's letter, Mr. Heister's resignation on July 16, 2003, was not the cause of the students having a substitute teacher in November." (Internal quotations omitted). Yet, as we noted in *Board of Education of Prince George's County v. Waeldner*, 298 Md. 354, 363, 470 A.2d 332, 336 (1984), "[i]t is, of course, elementary that a court, upon judicial review of a decision of an administrative agency, will not substitute its judgment on the facts for that of the agency." (Citation omitted).

On appeal, the local board unanimously upheld the superintendent's decision to withhold Mr. Heister's accrued salary. The local board found that the withholding of accrued salary was warranted, reasonable, and consistent with the terms of the Regular Contract as set forth in COMAR; that the forfeiture provision contains no language making it applicable only to individuals who resign during the school year; that it applies to Mr. Heister who completed teaching the school year; and that the forfeiture clause is valid and enforceable.

*Christina L. Marvel*

At the time of her resignation, Ms. Marvel was a first year certified teacher with TCPS assigned to Easton Middle School to teach math. Ms. Marvel was employed under the Regular Contract as required by State Board regulation. *See* COMAR 13A.07.02.01B.

By letter of February 12, 2003, the Assistant Superintendent, John Masone, advised Ms. Marvel that she would receive written notification from TCPS no later than May 1, 2003, if the local board were to decide not to renew her teaching contract. The letter also advised Ms. Marvel of her obligation to provide timely written notice if she intended to resign from her position. The letter contained the same language as the letter to Mr. Heister referenced above. On April 22, 2003, TCPS renewed Ms. Marvel's contract.

On August 4, 2003, the school system received a letter of resignation from Ms. Marvel. The resignation letter states as follows:

It is with deep regret that I will be unable to return to Easton Middle School for the 2003–2004 school year. I appreciate the opportunity that you have provided to me this past year in allowing me to work in your school district. However, a position has become available, at the last minute, closer to my home and I have decided to transfer to that school district. I want to thank you again for the experiences you have provided me through teach-

ing in your school district, and apologize for the short notice.

Ms. Eunice Jenkins, Personnel Supervisor, contacted Ms. Marvel and advised her that resignations had been due on May 1. Ms. Marvel indicated that she had accepted a teaching position in Delaware. Thereafter, the superintendent withheld the remaining payments of Ms. Marvel's 12–month salary as of the date of her resignation.[10]

TCPS provided substantial training and mentoring services to Ms. Marvel during her employment with the school system. TCPS had no warning prior to August 4, 2003, that Ms. Marvel did not intend to fulfill the obligations of her contract. TCPS has been unable to secure a suitable replacement for Ms. Marvel's position. A substitute teacher not certified in mathematics was placed in the classroom, but later left. A second substitute teacher, also not certified in mathematics, has since been placed in the classroom.

On appeal, the local board unanimously upheld the superintendent's decision to withhold Ms. Marvel's accrued salary. The local board found that the forfeiture clause was reasonable, was created pursuant to a valid exercise of the State Board's authority to regulate public schools in Maryland, and was enacted to further a legitimate public purpose. (Emphasis in original).

## III.

The language of the contractual forfeiture provision in dispute has been included in public school teachers' contracts in Maryland since at least 1921. *See Board of Education v. Cearfoss,* 165 Md. 178, 180–181, 166 A. 732, 733 (1933) (noting that the claimant entered into her teacher's employment contract with the State in 1921; that contract contained virtually the same pertinent language as appears in

---

10. In a footnote, the State Board noted the following:

One regular paycheck in the amount of $1,572.09 and one paycheck for summer school in the amount of $1,895.08 for a total of $3,467.17 were withheld.

present contracts). The precise language required is set forth presently in COMAR 13A.07.02.01. As the Court of Special Appeals noted in *McIntyre v. Board of Education of Kent County*, 55 Md.App. 219, 224, 461 A.2d 63, 66 (1983), "the State Board did not merely 'prescribe the form of the contract,' it *compelled* that precise contract and proscribed the use of any deviation therefrom." (Emphasis in original). *See also* COMAR 13A.07.02.01B(1) & (C) (stating that no other contracts shall be recognized). As we recognized in *Lussier v. Maryland Racing Commission*, 343 Md. 681, 688, 684 A.2d 804, 807 (1996), "[t]his Court has consistently held that, where the Legislature has delegated such broad authority to a state administrative agency to promulgate regulations in an area, the agency's regulations are valid under the statute if they do not contradict the statutory language or purpose." "Our cases have long made clear that the State Board has very broad statutory authority over the administration of the public school system in this State." *Board of Educ. of Prince George's Co. v. Waeldner*, 298 Md. 354, 359–60, 470 A.2d 332, 335 (1984). Section 2–205 of the Education Article enumerates the powers and duties of the State Board. The article provides, in relevant part:

(1) Without charge and with the advice of the Attorney General, the State Board shall explain the true intent and meaning of the provisions of:

(i) This article that are within its jurisdiction; and

(ii) The bylaws, rules, and regulations adopted by the Board.

(2) The Board shall decide all controversies and disputes under these provisions.

(3) The decision of the Board is final.

§ 2–205(e). A portion of these specific powers of the State Board are delegated further to the county superintendents.[11]

---

11. As we explained in *Chesapeake Charter, Inc. v. Anne Arundel County Board of Education*, 358 Md. 129, 138, 747 A.2d 625, 630 (2000),

*See* § 4–205(c) (stating that "each county superintendent shall explain the true intent and meaning of: (i) The school law; and (ii) The applicable bylaws of the State Board").

In *Wilson v. Board of Education of Montgomery County,* 234 Md. 561, 565, 200 A.2d 67, 69 (1964), we noted that "[t]he totality of these provisions, quite plainly we think, invests the State Board with the last word on any matter concerning educational policy or the administration of the system of public education. This has been described as 'a visitatorial power of the most comprehensive character.' " (Citations omitted). We have had occasion to explain the scope and purpose of this visitatorial power:

> We think it beyond question that the power of visitation vested in the State Board is one of general control and supervision; it authorizes the State Board to superintend the activities of the local boards of education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving the educational policy or proper administration of the public school system of the State, the State Board's visit[atorial] [12] power

[f]or each county, the Legislature has created a county department of education that, in structure, generally mirrors that of the State Department of Education. The county school board is the head of the county department and is responsible for administering, in the county, the supervening State policy determined by the State Board of Education, in accordance with State Board's directives.[ ] *See* ED [Education Article] § 4–108. There is, as well, a county superintendent, who is the executive officer of the county board and, in essence, the chief executive officer of the county department.

Yet, in *Waeldner,* 298 Md. at 361–62, 470 A.2d at 336 (citing *Wilson v. Board of Education,* 234 Md. 561, 565, 200 A.2d 67, 70 (1964)), we stated that "the powers of the County Board are subordinate to those of the State Board and the mere fact that the authority to discipline teachers is initially within the scope of the County Board's authority does not negate the power of the State Board to review it and set it aside." (Citation omitted).

12. In *Zeitschel,* the Court noted, in a footnote, that the terms "visitorial" and "visitatorial" are used interchangeably; however, for the sake of consistency and clarity in the future, we encourage the use of "visitatorial" henceforth.

authorizes it to correct all abuses of authority and to nullify all irregular proceedings. (Citations omitted).

*Zeitschel,* 274 Md. at 81, 332 A.2d at 912–13.

If every dispute or contention among those entrusted with the administration of the system, or between the functionaries and the patrons or pupils of the schools, offered an occasion for a resort to the courts for settlement, the working of the system would not only be greatly embarrassed and obstructed, but such contentions before the courts would necessarily be attended with great costs and delay, and likely generate such intestine heats and divisions as would, in a great degree, counteract the beneficial purposes of the law.

*Wiley v. Allegany County School Commissioners,* 51 Md. 401, 406 (1879). *See also Zantzinger v. Manning,* 123 Md. 169, 182, 90 A. 839, 844 (1914) ("Such controversies in the Courts not only greatly embarrass the orderly and successful administration of the public school system, but impose heavy burdens and costs upon the parties interested.").

■ The State Board's powers are not without limit or their exercise unreviewable. Particularly relevant to the present case are the limitations that the State Board may not decide finally purely legal questions, *Resetar v. State Bd. of Education,* 284 Md. 537, 556, 399 A.2d 225, 235 (1979); *Wilson,* 234 Md. at 565, 200 A.2d at 69; *Cearfoss,* 165 Md. at 186, 166 A. at 736; *Board of School Commissioners of Anne Arundel Cty. v. Henkel,* 117 Md. 97, 105, 83 A. 89, 92 (1912); *Duer v. Dashiell,* 91 Md. 660, 671, 47 A. 1040, 1042 (1900), and may not exercise its powers arbitrarily or capriciously, *Zeitschel,* 274 Md. at 81, 332 A.2d at 913.[13] Regarding the first listed limitation, howev-

---

**13.** The Court of Special Appeals, in *Hurl v. Board of Education of Howard County,* 107 Md.App. 286, 299, 667 A.2d 970, 977 (1995), summarized four instances where judicial review may be more expansive in its inquiry:

(1) the matter involves a purely legal question. *See, e.g., Wilson v. Board of Educ.,* 234 Md. 561, 565 [200 A.2d 67] (1964); *Board of Educ. v. Cearfoss,* 165 Md. 178, 186–87 [166 A. 732] (1933);

er, we have noted, in the context of decision-making by administrative bodies generally, that "with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency." *Maryland Aviation Administration v. Noland*, 386 Md. 556, 572, 873 A.2d 1145, 1154 (2005) quoting *Board of Physician v. Banks*, 354 Md. 59, 69, 729 A.2d 376, 381 (1999).

■ As recognized in *Hammaker v. Schleigh*, 157 Md. 652, 667, 147 A. 790, 796 (1929), "[i]t is a question of law whether the [contractual] provision is penal or only a liquidation of damages." *See also Traylor v. Grafton*, 273 Md. 649, 667, 332 A.2d 651, 663 (1975). Therefore, we turn to the specific legal question of whether the forfeiture provision included in Maryland public school teachers' employment contracts is a valid and enforceable liquidated damages clause or an unenforceable penalty.

## IV.

■ We have defined a liquidated damages clause as "a specific sum of money . . . expressly stipulated by the parties to a . . . contract as the amount of damages to be recovered by either party for a breach of the agreement by the other." *Mass. Indem. & Life Ins. v. Dresser*, 269 Md. 364, 368, 306 A.2d 213, 216 (1973) (citing BLACK'S LAW DICTIONARY (Rev. 4th Ed.1968)). Considering the validity of a liquidated damages provision, the U.S. Supreme Court stated that

[t]oday the law does not look with disfavor upon "liquidated damages" provisions in contracts. When they are fair and

---

(2) the State Board has contravened state statute. *See, e.g., Halsey v. Board of Educ.*, 273 Md. 566, 572 [331 A.2d 306] (1975). *Cf. Board of Educ. v. Waeldner*, 298 Md. 354, 362 [470 A.2d 332] (1984); *Wilson*, 234 Md. at 566 [200 A.2d 67];

(3) the State Board exercised its power in bad faith, fraudulently, or in breach of trust. *See, e.g., Halsey*, 273 Md. at 572 [331 A.2d 306]; *Wilson*, 234 Md. at 565 [200 A.2d 67] (citing *Coddington v. Helbig*, 195 Md. 330, 337–38 [73 A.2d 454] (1950)); or

(4) the State Board exercised its power arbitrarily or capriciously. *See, e.g., Zeitschel v. Board of Education*, 274 Md. 69, 81–82 [332 A.2d 906] (1975). (Alterations in original).

reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced. They serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts. (Internal citations omitted).

*Priebe & Sons v. U.S.*, 332 U.S. 407, 411, 68 S.Ct. 123, 126, 92 L.Ed. 32, 38 (1947). Nonetheless, as this Court noted in *Willson v. Mayor and City Council of Baltimore*, 83 Md. 203, 211, 34 A. 774, 775 (1896), determining whether a clause should be regarded as a valid and enforceable liquidated damages provision or a penalty "is one of the most difficult and perplexing inquiries encountered in the construction of written agreements." Thus, "if there is doubt whether a contract provides for liquidated damages or a penalty, the provision will be construed as a penalty. . . ." *Goldman v. Conn. Gen. Life Ins. Co.*, 251 Md. 575, 581, 248 A.2d 154, 158 (1968) (Citations omitted).

■■■■ There are three essential elements of a valid and enforceable liquidated damages clause. "First, such a clause must provide 'in clear and unambiguous terms' for 'a certain sum'[.]" *Mass. Indem. & Life Ins., supra*, 269 Md. at 368, 306 A.2d at 216 (Citation omitted). "Secondly, the liquidated damages must reasonably be compensation for the damages anticipated by the breach[.]" *Mass. Indem. & Life Ins., supra*, 269 Md. at 369, 306 A.2d at 216 (Citations omitted). "Thirdly, liquidated damage clauses are by their nature mandatory binding agreements before the fact which may not be altered to correspond to actual damages determined after the fact[.]" *Id.* (Citations omitted). While the language used by the parties is instructive in determining the validity of a liquidated damages clause, "[t]he decisive element is the intention of the parties—whether they intended that the sum be a penalty or an agreed-upon amount as damages in case of a breach and this is to be gleaned from the subject matter, the language of the contract and the circumstances surrounding its execution." *Traylor*, 273 Md. at 661, 332 A.2d at 660 (Citations omitted).

■ Like in *Holloway v. Faw, Casson & Co.*, 319 Md. 324, 354, 572 A.2d 510, 525 (1990), where we determined that the contractual language " 'the prior year's fee for any clients' . . . [could] be calculated with reasonable certainty as a specific sum," we conclude in the present case that the forfeiture provision in the employment contracts establishes a certain sum because "salary already accrued" may be calculated readily and with certainty as a definite amount. In contrast to the conclusion reached in *Massachusetts Indemnity & Life Insurance Company v. Dresser, supra,* 269 Md. at 368, 306 A.2d at 216, where the amount in question was "not capable of calculation until three years after termination of employment as it [wa]s contingent upon the continued payment of premiums on policies sold," the specific forfeited amount here was ascertainable and ascertained immediately upon the breach.

■ Next, we conclude that the record in the present case supports the position that the forfeiture provision compensates reasonably the school system for damages anticipated by the nature of an untimely resignation breach. As this Court noted in *Goldman v. Connecticut General Life Insurance Company, supra,* 251 Md. at 582, 248 A.2d at 158, the contractual provision "will not be regarded as a penalty if the amount is a reasonable forecast of just compensation at the time the contract was made, and if actual damages are incapable or very difficult [to] accurate[ly] estimat[e]." (Internal citations omitted). As the State Board noted in its written opinion rendered on 21 July 2004, "the provision attempts to reasonably compensate the local board for damages incurred in recruiting and training a replacement teacher at the last moment and the additional costs of using substitute teachers." [14] Moreover, as the State Board noted also, the actual

---

14. The superintendent of the TCPS wrote the following in letters, dated 20 November 2003, to the President of the County Board (Mr. J. Michael Cottingham) in support of her decisions to forfeit the Appellees' accrued salaries:

TCPS incurs substantial financial damages in three main areas when a teacher resigns after the contract date: (1) extra recruitment for the replacement teacher necessitates additional expenses in the nature of

losses are incapable to predict with reasonable certainty. We have stated, "the determination of whether the amount specified is a penalty or liquidated damages is to be determined as of the time of execution of the contract. The damages in this instance that would be suffered by the County by delay obviously would be difficult of ascertainment." *Anne Arundel Co. v. Norair Engineering Corp.,* 275 Md. 480, 494, 341 A.2d 287, 294 (1975). *See also Priebe & Sons,* 332 U.S. at 412, 68 S.Ct. at 126, 92 L.Ed. at 38 ("[T]he fact that the damages suffered are shown to be less than the damages contracted for is not fatal. These provisions are to be judged as of the time of making the contract.").

Finally, the forfeiture provision in the present case is binding and may not be altered to correspond to actual damages. The forfeiture provision provides: "If any of the conditions of this contract shall be violated by the certified employee named herein, salary already accrued will be forfeited, in the discretion of the Local Board of Education." The Circuit Court construed this provision to mean that the "salary forfeitures are not set forth as a penalty that *will* be imposed. The notice going out to the employees does not state, it says it *may* be." (Emphasis added). The Circuit Court therefore concluded that the decision of the superintendent, acting on behalf of the State Board, to withhold the accrued, but unpaid, portions of the salaries of Mr. Heister and Ms. Marvel was "discretionary and the exercise of that discretion is arbitrary." We disagree. The discretion in the contractual clause provided to the local board does not present a choice between pursuing accrued salary or actual damages; rather, it enables the local board to decide whether to enforce the forfeiture provision, as its sole monetary recov-

---

advertising, employee time, and additional recruiting trips; (2) TCPS has suffered financially in the need for additional training of the replacement teachers, involving two weeks training for which the teacher is paid as well as the trainers and consultants; (3) the loss of investment in the postgraduate education provided to teachers, such as [Mr. Heister/Ms. Marvel] during [his/her] time as a teacher with the County system.

ery, for a breach of the contract. In the present case, there is no evidence in the record that the decision to enforce the forfeiture provision by the superintendent was arbitrary. Furthermore, with regard to issues pertaining to administrative decisions affecting the proper operation of the public school system in Maryland (e.g., whether to enforce the forfeiture provision based on a case-by-case analysis), we shall afford the State Board very broad discretion, consistent with its grant of statutory authority. Accordingly, we conclude that the forfeiture provision is a valid and enforceable liquidated damages clause. The Circuit Court erred in reversing the State Board's action.

JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE MARYLAND STATE BOARD OF EDUCATION. COSTS TO BE DIVIDED EQUALLY BY APPELLEES.